UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


George C. Bougopoulos


        v.                        Civil No. 12-cv-338-JD
                                  Opinion No. 2013 DNH 087

Altria Group, Inc. et al.


O R D E R

George Bougopoulos sued Altria Group, Inc. ("Altria"),
Philip Morris USA Inc. ("Philip Morris"), and R.J. Reynolds
Tobacco Company, Inc. ("R.J. Reynolds"), alleging claims for
products liability; negligence; negligent misrepresentation;
fraudulent misrepresentation; violation of New Hampshire's
Consumer Protection Act, RSA 358-A:2; and violation of the
Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18
U.S.C. § 1961 et seq., arising out of Bougopoulos's injuries from
smoking cigarettes manufactured by the defendants.  The
defendants move to dismiss all claims other than the
misrepresentation claims.  Bougopoulos objects to the motion.


Background

Bougopoulos alleges that he began smoking cigarettes in 1960
when he was thirteen years old.  At first, Bougopoulos smoked
Lucky Strike Cigarettes, which were manufactured and marketed by

R.J. Reynolds.  A few years later, addicted to nicotine,
Bougopoulos started smoking Marlboro cigarettes, which were
marketed and manufactured by Philip Morris Companies Inc., the
predecessor to Altria and Philip Morris.  Bougopoulos alleges
that the defendants focused their marketing for both brands of
cigarettes on getting young people, such as him, to smoke.

Bougopoulos alleges that he was addicted to smoking before
the appearance of the first warning label on cigarette boxes in
1966.  He also alleges that he continued smoking for his entire
life despite those warnings and the possible health risks
associated with cigarettes because of "his nicotine addiction and
the contrary publicity generated by Defendants and organizations
which they created and supported."

Bougopoulos alleges that the defendants made several
misrepresentations throughout the 1950s, 1960s, and 1970s about
the health risks related to smoking cigarettes and the addictive
properties of nicotine.  He further alleges that the defendants
manipulated the nicotine in their cigarettes to make the
cigarettes more addictive.

In March 2011, Bougopoulos was diagnosed with Chronic
Obstructive Pulmonary Disease ("COPD").  He alleges that COPD "is
caused by noxious particles or gas from tobacco smoking which
triggers an abnormal inflammatory response in the lung."

Bougopoulos alleges that because of his COPD, he can no longer work or travel, and requires an oxygen tank to help him breathe.

### Standard of Review

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must determine whether the facts alleged, when taken as true and in the light most favorable to the plaintiff, state a claim on which relief can be granted. Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009). Under the notice pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff need provide only a short and plain statement that provides enough facts "'to raise a right to relief above the speculative level . . . .'" Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The court takes the well-pled allegations as true, views all of the facts in the light most favorable to the non-moving party, and determines whether the complaint alleges facts to support a claim "that is plausible on its face." Downing v. Glove Direct LLC, 682 F.3d 18, 22 (1st Cir. 2012) (internal citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

<u>Discussion</u>

Bougopoulos brings the following claims: Count I - "Products Liability - Strict Liability"; Count II - "Products Liability - Misrepresentation by Seller of Chattels to Consumer"; Count III - "Products Liability - Supply of Chattels Unlikely to be Made Safe for Use"; Count IV - "Negligence"; Count V - "Negligent Misrepresentation"; Count VI - "Fraudulent Misrepresentation/ Deceit"; Count VII - "New Hampshire Consumer Protection Act RSA Chapter 358-A et seq."; and Count VIII - "Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. §§ 1962(a)(b)(c) and (d); 1964(a); 1964(c)." The defendants move to dismiss Counts I, II, III, IV, VII, and VIII.


A.   <u>Count I - Products Liability - Strict Liability</u>

New Hampshire follows the Restatement (Second) of Torts, § 402A, for strict liability. <u>Kelleher v. Marvin Lumbar & Cedar Co.</u>, 152 N.H. 813, 824 (2005). "Under the doctrine of strict liability, one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer." <u>Id.</u> (internal quotation marks omitted).

"'[T]he basis of any claim involving products liability []
is an allegation of a defect associated with the product, which
makes the product unreasonably dangerous, and causes the injury
for which recovery is sought.'"  Buckingham v. R.J. Reynolds
Tobacco Co., 142 N.H, 822, 825-26 (1998) (quoting Gianitsis v.
Am. Brands, Inc., 685 F. Supp. 853, 856 (D.N.H. 1988)).  In other
words, to maintain a claim for strict products liability, a
plaintiff must show that a defect in the product caused the
product to be unreasonably dangerous and caused the plaintiff's
injury.  See Buckingham, 142 N.H. at 826 ("'The rule stated in [§
402A] applies only where the defective condition of the product
makes it unreasonably dangerous to the user or consumer.'")
(quoting § 402A cmt. i); see also Gianitsis, 685 F. Supp. at 857
("[A] claimant must establish that it is a product's defective
condition which causes the product to be unreasonably
dangerous.").

A plaintiff cannot maintain a strict liability claim against
cigarette manufacturers based on allegations that all cigarettes
are inherently defective.  See Buckingham, 142 N.H. at 826; see
also § 402A cmt. i ("Good tobacco is not unreasonably dangerous
merely because the effects of smoking may be harmful; but tobacco
containing something like marijuana may be unreasonably
dangerous.").  Instead, a plaintiff must "allege that something

is wrong with the" defendant's cigarettes.  <u>Buckingham</u>, 142 N.H.
at 826.

The defendants argue that Bougopoulos's strict products
liability claim fails for several reasons.  They argue that
nicotine is found in every cigarette and is naturally addictive,
and, therefore, manipulated nicotine designed to enhance
addiction cannot be considered a product defect.  They further
argue that even if manipulated nicotine could be considered a
product defect, Bougopoulos has not alleged that the manipulated
nicotine itself made the cigarettes unreasonably dangerous or
caused his injury.  The defendants further contend that the claim
is preempted by federal law.

    1.  <u>Product defect</u>

The defendants concede that Bougopoulos "has superficially
pled an alleged defect" by alleging that the defendants'
cigarettes "contained manipulated nicotine."  Defts. Mot. to
Dismiss at 7.  They also argue, however, that an allegation of
manipulated nicotine cannot be the basis of a design defect in a
strict products liability action.  The defendants cite <u>Pooshs v.
Philip Morris USA, Inc.</u>, --- F. Supp. 2d. ---, 2012 WL 5199450
(N.D. Cal. Oct. 22, 2012) and <u>Johnson v. Brown & Williamson</u>

Tobacco Corp., 345 F. Supp. 2d 16 (D. Mass. 2004), in support of
their argument.

In Pooshs, the plaintiff brought a defective design claim
against certain cigarette manufacturers, alleging that the
defendants' cigarettes were defectively designed because they
contained manipulated nicotine.  The court granted the
defendants' motion for summary judgment as to the defective
design claim, holding that "the plaintiff has not met her burden
of showing, through admissible evidence, that it was the
particular design of defendants' cigarettes that caused her lung
cancer."  Pooshs, 2012 WL 5199450, at *11.

In Johnson, the plaintiff brought a defective design claim
against a cigarette manufacturer alleging that the defendant
"manipulated the nicotine levels of its cigarettes in a manner
that would be sufficient to create and sustain an addiction."
Johnson, 345 F. Supp. 2d at 19 (internal quotation marks
omitted).  The court granted the defendant's motion for summary
judgment because the plaintiff's expert's "declarations [were]
utterly devoid of particulars concerning the methods, levels or
effects or any enhancements or manipulations" to the nicotine.
Id. at 20.  The court further held that the plaintiff "failed to
demonstrate how manipulation of nicotine levels could be

considered a design defect" because smokers would adjust their smoking to receive the desired dose.

Neither <u>Pooshs</u> nor <u>Johnson</u> supports the defendants' argument that manipulated nicotine cannot be considered a design defect for a strict products liability claim.  The courts in <u>Pooshs</u> and <u>Johnson</u> granted the defendants' motions for summary judgment because the plaintiffs had failed to provide sufficient evidence to support their claims.  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and a motion for summary judgment under Federal Rule of Civil Procedure 56, however, seek different remedies based on different standards.  <u>See</u> Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 56; <u>see also</u> <u>Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.</u>, 524 F.3d 315, 321 (1st Cir. 2008) (discussing differences).  The court in <u>Johnson</u> discussed the differences between the two standards when distinguishing a case that allowed a similar products liability claim to survive a motion to dismiss.  <u>See</u> <u>Johnson</u>, 345 F. Supp. 2d at 21-22 (discussing how <u>Herlihy v. R.J. Reynolds Tobacco Co.</u>, 1988 WL 73434 (D. Mass. June 27, 2008), is "inapplicable because it dealt with a motion to dismiss . . . where the issue was the sufficiency of the allegation . . . . [as opposed to] [h]ere, on a motion for summary judgment, the issue is whether Johnson has

elicited evidence in support of his (properly alleged) claims of design defect").

Bougopoulos alleges that the defendants manipulated the nicotine in their cigarettes, which is a product defect separate from an allegation that cigarettes as a whole are inherently dangerous.  See, e.g., <u>Evans v. Lorillard Tobacco Co.</u>, 30 Mass. L. Rptr. 207, 2011 WL 7860228, at *22 (Mass. Super. Sept. 6, 2011) ("[B]ased on my findings concerning the defendant's manipulation of nicotine and the carcinogenicity of cigarettes . . . I conclude that Newport cigarettes contain at least two design defects . . . ."); <u>see also</u> <u>Johnson</u>, 345 F. Supp. 2d at 20-21 ("The law requires a showing that the specific cigarettes consumed by the smoker were defective.  It need be shown that the cigarettes deviated from the norm in some untold way.") (internal quotation marks and citation omitted); <u>Varney v. R.J. Reynolds Tobacco Co.</u>, 118 F. Supp. 2d 63, 70 (D. Mass. 2000) (dismissing products liability claim because "the plaintiff's claim is that <u>all</u> cigarettes are unreasonably dangerous, not that the defendants' cigarettes were, because of some unique feature of design, more dangerous than others").  This assertion is sufficient to allege a product defect at this stage of the proceedings.  <u>See e.g.</u>, <u>Johnson v. Brown & Williamson Tobacco Corp.</u>, 122 F. Supp. 2d 194, 205 (D. Mass. 2000) ("the standard

for pleading deviation from the norm for [cigarettes] in a
defective design case is [not] stringent"); see also King v.
Philip Morris, Inc., 2000 WL 34016358, at *7-*8 (N.H. Sup. Ct.
Nov. 2, 2000) ("The plaintiff's strict liability claim is
reasonably susceptible of a construction that would permit
recovery to the extent it is based on an allegation that the
defendants manipulated their product to make it more harmful or
addictive than plain tobacco."); Kyte v. Philip Morris Inc., 408
Mass. 162, 171 (Mass. 1990) (allowing products liability claim to
go forward because it alleged that defendant's cigarettes were
particularly carcinogenic and addictive without alleging that all
cigarettes were inherently defective).

    2.   Causal connection

    The defendants argue that even if manipulated nicotine could
be considered a product defect, Bougopoulos has not alleged that
the manipulated nicotine made the cigarettes unreasonably
dangerous or caused his COPD.  They contend that Bougopoulos
alleges that all cigarettes have disease-causing characteristics,
including those that caused his COPD, and, therefore, the alleged
manipulated nicotine did not cause the defendants' cigarettes to
be unreasonably dangerous or cause his COPD.

10

The defendants are correct that Bougopoulos does not allege
that the properties of the manipulated nicotine themselves cause
diseases.  Bougopoulos alleges, however, that "smoking related
diseases are dose dependent that is, each and every exposure to
cigarette smoke increases the risk of disease."  Compl. § 6.  He
further alleges "[t]he likelihood of developing COPD increases
with age and cumulative smoke exposure, and almost all life-long
smokers will develop COPD, provided that smoking-related,
extrapulmonary diseases (cardiovascular, diabetes, cancer) do not
claim their lives beforehand."  Id. at § 7.

    Bougopoulos alleges that he was a life-long smoker from the
time he was thirteen years old, in part due to the defendants'
manipulation of nicotine which made their cigarettes more
addictive.  See id. at § 28.  Viewing the facts in the light most
favorable to Bougopoulos, he has alleged that the product defect,
manipulated nicotine, caused him to remain addicted to cigarettes
and become a life-long smoker, which in turn led to his COPD.
See, e.g., DeLuca v. Liggett & Myers, Inc., 2003 WL 1798940, at
*9 (N.D. Ill. Apr. 4, 2003) (plaintiff "must also establish that
the particular defect that she identified-cigarettes' addictive
quality-was the proximate cause of [the decedent's] injury . . .
. a theory that addiction is what really kills").  Therefore, he
has alleged a sufficient causal connection to survive a motion to

dismiss.  See Szulik v. State Street Bank and Trust Co., --- F.
Supp. 2d ---, 2013 WL 1301064, at *23 (D. Mass. Mar. 25, 2013)
("Ordinarily, questions of causation are appropriately handled at
summary judgment or trial, not on a motion to dismiss.")
(internal quotation marks omitted).

    3.   Preemption

    The defendants also argue that Bougopoulos's strict
liability claim is preempted by federal law because "Congress . .
. has foreclosed the removal of tobacco products from the
market."  FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120,
137 (2000).  They contend that "[t]he imposition of damages based
upon the inherent dangers of cigarettes would conflict with this
congressional intent by leading to a de facto ban on cigarettes."
Defts. Mot. to Dismiss at 13 (citing Conley v. R.J. Reynolds
Tobacco Corp., 286 F. Supp. 2d 1097, 1109 (N.D. Cal. 2002) and
Liggett Group, Inc. v. Davis, 973 So.2d 467, 472-73 (Fla 4th DCA
2007)).

    If Bougopoulos had asserted liability based on the inherent
dangerous characteristics of cigarettes, the claim may have been
preempted.  See Cruz Vargas v. R.J. Reynolds Tobacco Co., 218 F.
Supp. 2d 109, 118 (D.P.R. 2002) ("[T]o the extent that Plaintiffs
seek to impose tort liability against Defendant Reynolds merely

for manufacturing and selling cigarettes, we find Plaintiffs'
claims to be preempted."); but see Richardson v. R.J. Reynolds
Tobacco Co., 578 F. Supp. 2d 1073, 1077 (E.D. Wis. 2008)
("Congress clearly intended to protect the national economy from
the burden imposed by diverse, nonuniform, and confusing
cigarette labeling and advertising regulations, but did not
clearly intend to extend broad immunity from common law liability
to cigarette manufacturers.") (internal quotation marks and
citation omitted).  As discussed above, however, Bougopoulos's
strict liability claim alleges a defect due to the defendants'
manipulation of nicotine, not the inherent characteristics of
cigarettes.  Therefore, Bougopoulos's strict liability claim is
not preempted by federal law.  See, e.g., Conley, 286 F. Supp. 2d
at 1107 ("If, however, in this action liability is imposed based
on a design defect in the cigarettes that is scientifically and
commercially feasible to remove from the cigarettes that the
decedent smoked, plaintiffs' claims will not be preempted because
imposing liability would not be tantamount to a ban on tobacco
products.").[1]

---

[1]Because Bougopoulos's claim is not based on the inherent
dangers of cigarettes, the court need not decide whether such a
claim would be preempted.

Accepting as true all well-pleaded factual allegations in the complaint and drawing all reasonable inferences in Bougopoulos's favor, he has sufficiently alleged a claim for strict products liability.  Whether Bougopoulos has any evidentiary support for his strict liability allegations is a separate issue, one that is better addressed in a motion for summary judgment rather than a Rule 12(b)(6) motion.


B.   Count II - Products Liability - Misrepresentation by Seller of Chattels to Consumer

Bougopoulos's products liability claim in Count II appears to be based on § 402B of the Restatement (Second) of Torts.[2] Section 402B provides:

> One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though: (a) it is not made fraudulently or negligently, and (b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.

---

[2] Bougopoulos does not specifically assert that Count II is based on § 402B, but the allegations in Count II largely track the language of that section, which is titled "Misrepresentation By Seller Of Chattels To Consumer."  In addition, Bougopoulos's arguments in his opposition to the defendants' motion to dismiss regarding Count II focus mainly on § 402B.

14

Thus, "[s]ection 402B addresses . . . an affirmative representation of material fact regarding the character or quality of the product and requires the plaintiff's reliance on the representations."  English v. Suzuki Motor Co., Ltd., 1997 WL 428565, at *7 (10th Cir. July 30, 1997).[3]

"[U]nlike . . . fraud and negligent misrepresentation claims, a 'strict liability' product misrepresentation claim such as the one articulated in Section 402B of the Restatement would not require proof of either actual or constructive knowledge, though it would still require proof of reliance."  Herzog v. Arthrocare Corp., 2003 WL 1785795, at *15 (D. Me. Mar. 21, 2003). "Section 402B would impose liability even for 'innocent' misrepresentations."  Id.

The defendants argue that New Hampshire has not adopted § 402B and does not provide a cause of action based on an innocent misrepresentation.  In his objection, Bougopoulos argues that the defendants "incorrectly state that Count Two of Plaintiff's Complaint is an 'innocent' misrepresentation claim . . . . This is simply not the case.  A reading of Plaintiff's Compliant [sic] will indicate that the Defendants made

---

[3]Although Bougopoulos does not label Count II a strict liability claim, "[t]he rule stated in [§ 402B] is one of strict liability for physical harm to the consumer."  § 402B cmt. a.

misrepresentations which were anything but innocent . . . .
Plaintiff submits that he has alleged the requisite states of
mind of negligence and intentional misrepresentation."  Pl.'s
Obj. at 16.

In addition to Bougopoulos's products liability
misrepresentation claim in Count II, he has also brought separate
claims for negligent misrepresentation (Count V) and fraudulent
misrepresentation (Count VI) based on the same statements.  The
defendants have not moved to dismiss either Count V or Count VI.
Therefore, because Bougopoulos bases his claim in Count II on
alleged negligent and intentional misrepresentations, his claim
in Count II is redundant and should be dismissed to avoid
confusing repetition of the same claims.[4]  See Fed. R. Civ. P.
12(f); 2 James Wm. Moore et al., Moore's Federal Practice §
12.37[3] (2003).  Accordingly, Count II is dismissed.

---

[4]Bougopoulos argues that although precedent concerning the
availability of a § 402B claim in New Hampshire is lacking, the
court should predict that the New Hampshire Supreme Court would
recognize such a cause of action.  Because Bougopoulos's products
liability claim based on § 402B and his claims for negligent
misrepresentation and intentional misrepresentation are
redundant, the court need not predict whether the New Hampshire
Supreme Court would recognize such a claim.

C.    <u>Count III and Count VI- Negligence</u>

Bougopoulos's claim in Count III, titled "Products Liability
- Supply of Chattels Unlikely to be Made Safe for Use," is based
on § 389 of the Restatement (Second) of Torts.  Although
Bougopoulos labels Count III a products liability claim,
"[s]ection 389 is a negligence provision governing the liability
of suppliers under Chapter 14, topic 1 of the Restatement."
<u>Buckingham</u>, 142 N.H. at 828.[5]  "[U]nder section 389, liability is
imposed only when it is shown that the supplier knew, or should
have known, that the chattel supplied is unsafe for its expected
use and then a duty is owed only to those who are foreseeably
endangered and either ignorant of the chattel's dangerous
propensities, or otherwise not chargeable with a positive balance
of fault."  <u>Id.</u> (internal citations omitted).  Bougopoulos also
brings a separate claim for negligence in Count IV, based on the
same allegations.

---

[5]Section 389 provides: "One who supplies directly or through
a third person a chattel for another's use, knowing or having
reason to know that the chattel is unlikely to be made reasonably
safe before being put to a use which the supplier should expect
it to be put, is subject to liability for physical harm caused by
such use to those whom the supplier should expect to use the
chattel or to be endangered by its probable use, and who are
ignorant of the dangerous character of the chattel or whose
knowledge thereof does not make them contributorily negligent,
although the supplier has informed the other for whose use the
chattel is supplied of its dangerous character."

The defendants argue that Bougopoulos's negligence claims are based on allegations that cigarettes are an inherently dangerous product, which, they contend, is not an actionable negligence claim in New Hampshire.  The defendants also argue that the § 389 claim fails because § 389 is limited to bystanders and does not apply to direct purchasers of products like Bougopoulos.  Although § 389 can apply to bystanders, see § 389 cmt. e, it is "simply a statement of basic negligence principles of foreseeability and fault in the supplier context." Buckingham, 142 N.H. at 828.  Therefore, the court addresses Counts III and IV together.

Bougopoulos's negligence claims are based on allegations that the defendants:

> marketed and sold cigarettes to Plaintiff which they knew contained poisonous substances capable of causing and likely to cause numerous serious injuries and diseases, including but not limited to, COPD and which they knew or should have known contained habit-forming and addictive substances capable of and likely to induce irresistible habits and/or physical and psychological dependence and addiction.[6]

Compl. § 41.  In his opposition to the defendants' motion to dismiss, Bougopoulos contends that his negligence claim is not based on the inherently dangerous nature of cigarettes, but

---

[6]These allegations are contained in the paragraphs in Count IV.  The allegations in Count III are nearly identical.  See Compl. § 37.

instead on the allegations that "Defendants designed their products with the specific intent of creating an addiction to a harmful product . . . . [and they] undertook to make representations about the safety of their products."  Pl.'s Obj. at 24-25.

Viewing the facts in the light most favorable to Bougopoulos, he has alleged a negligence claim based on the defendants' manipulation of the nicotine in their cigarettes. Therefore, for the same reasons that support his products liability claim in Count I, Bougopoulos's allegations of negligence based on the defendants' manipulation of nicotine state a claim.  See Guilbeault v. R.J. Reynolds Tobacco Co., 84 F. Supp. 2d 263, 268 (D.R.I. 2000) ("The elements of a section 402A claim and a negligence claim based on a product defect overlap significantly, with the negligence claim having the additional requirement that the defendant knew or had reason to know . . . that [the product] was defective in any manner.") (internal quotation marks and citation omitted).  To the extent Bougopoulos's allegations suggest a negligence claim based on the inherent dangers of smoking cigarettes, that claim is dismissed.[7]

---

[7]To the extent Bougopoulos argues in his opposition that his negligence claim is based in part on the defendants' alleged misrepresentations about the safety of cigarettes, that claim is not sufficiently presented in his complaint.  Even if Bougopoulos

Accordingly, the defendants motion to dismiss Count III is denied to the extent that Count III is based on the defendants' alleged manipulation of nicotine.  Because Count IV is also a negligence claim and is based on the same allegations as those that support Count III, Count IV is redundant and should be dismissed to avoid confusing repetition of the same claims.  <u>See</u> Fed. R. Civ. P. 12(f).


D.   <u>Count VII - New Hampshire Consumer Protection Act</u>

Bougopoulos alleges that the defendants violated New Hampshire's Consumer Protection Act ("CPA"), RSA 358-A:2, by making misrepresentations about the risks and addictive nature of their cigarettes, and by designing their cigarettes to be addictive.  The defendants argue that Bougopoulos's CPA claim fails under the exempt transactions provision of the statute, RSA 358-A:2(IV-a), based on the effect of the applicable statute of limitations, RSA 508:4.

RSA 358-A:2 states that "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce

---

had made such allegations, that part of his negligence claim would be dismissed because it is duplicative of his negligent misrepresentation claim in Count V.  <u>See</u> Fed. R. Civ. P. 12(f).

within this state."   "[Section] 358-A:3(IV-a) exempts from the
CPA any claim involving a transaction that occurred more than
three years before the date on which the plaintiff knew or should
have known of its wrongful nature."  <u>Lehane v. Wachovia Mortg.,</u>
<u>FSB</u>, 2013 WL 1637166, at *3 n.5 (D.N.H. Apr. 16, 2013).  "The
burden of proving exemptions from the provisions of this chapter
by reason of paragraph[] . . . IV-a of [RSA 358-A] shall be upon
the person claiming the exemption."  RSA 358-A:3 (V).

     In addition, "section 508:4, I's general statute of
limitations [applies] to [a] plaintiff['s] Consumer Protection
Act claim."  <u>Forrester Envtl. Servs., Inc. v. Wheelabrator Tech.,</u>
<u>Inc.</u>, 2011 WL 6300536, at *8 n.10 (D.N.H. Dec. 16, 2011), vacated
on other grounds, --- F.3d ---, 2013 WL 2097348 (Fed. Cir. May
16, 2013).  "Under the statute, the limitations period on the
plaintiffs' claims began running when they '[d]iscovered, or in
the exercise of reasonable diligence should have discovered, the
injury and its causal relationship to the act or omission
complained of.'"  <u>Id.</u> at *8 (quoting RSA 508:4).

     The defendants argue that the interplay between the three-
year statute of limitations and the CPA's exempt transactions
provision requires the dismissal of Bougopoulos's CPA claim.
Specifically, the defendants argue that because the complaint was
filed on September 3, 2012, the claim is time-barred unless

Bougopoulos did not know or should not have known of the conduct alleged to be in violation of the CPA until after September 3, 2009.  The defendants further argue that "the CPA exempts transactions occurring more than three years before September 3, 2009, [and, therefore,] Plaintiff cannot state a claim under the CPA unless he alleges that he was injured by conduct or transactions occurring on or after September 3, 2006."  Defts. Mot. to Dismiss at 18.  The defendants contend that Bougopoulos has not alleged any conduct or transactions occurring after September 3, 2006, and, therefore, his claim must be dismissed.

The defendants appear to attempt to conflate the standard under RSA 358-A:3(IV-a) with the standard under RSA 508:14. "[RSA] 358-A:3(IV-a) [,however,] is not a statute of limitations." Lehane v. Wachovia Mortg., FSB, 2013 WL 1637166, at *3 n.5.  Rather, RSA 358-A:3 (IV-a) exempts from the CPA "[t]ransactions entered into more than 3 years prior to the time the plaintiff knew, or reasonably should have known, of the conduct alleged to be in violation of the chapter."  RSA 358-A:3 (IV-a).  In other words, RSA 358-A:3 focuses on the plaintiff's knowledge of the defendant's wrongful conduct and RSA 508:4 focuses on the plaintiff's knowledge of his injury and its casual relationship to the defendants' conduct.

22

The defendants have not carried their burden of showing that the transactions upon which Bougopoulos relies in support of his CPA claim are exempt under RSA 358-A:3(IV-a).  Although Bougopoulos has not specifically identified every misrepresentation or wrongful act that allegedly form the basis for his CPA claim, that does not, standing alone, show that he relies only on exempted transactions to support his claim.[8]  <u>See, e.g.</u>, <u>Sepulveda-Villarini v. Dep't of Educ. of P.R.</u>, 628 F.3d 25, 30 (1st Cir. 2010) (a claim is not subject to dismissal at a motion to dismiss stage merely because "other [ ] undisclosed facts may explain the sequence better.").  Accordingly, the defendants' motion to dismiss Count VII is denied.

E.   <u>Count VIII - Civil RICO</u>

Bougopoulos alleges that the defendants "used the mails, wire, radio and/or television in interstate commerce to misrepresent the harmful and addictive nature of cigarettes with the intention that smokers such as Bougopoulos would rely in this

---

[8]Although the defendants argue in their reply that Bougopoulos's allegations in support of his CPA claim do not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), "[t]his court ordinarily does not consider arguments raised for the first time in a reply memorandum and sees no reason to do so here."  <u>Contour Design, Inc. v. Chance Mold Steel Co. Ltd.</u>, 2011 WL 1564612, at *6 (D.N.H. Apr. 25, 2011).

information to their detriment."  Compl. § 64.  Bougopoulos
alleges that as a result,

> (a) he spent money on a product which, unknown to him,
> was harmful and addictive; (b) he lost income and
> incurred medical and other expenses due to his Chronic
> Obstructive Pulmonary Disease (COPD); (c) he has
> suffered physically and mentally from his Chronic
> Obstructive Pulmonary Disease (COPD) and will continue
> to suffer for the rest of his life; and (d) he has been
> damaged in other ways.

Id.  The defendants argue that none of Bougopoulos's alleged
injuries is compensable under civil RICO.

The RICO statute creates a cause of action for an individual
whose property or business interest has been injured by a
defendant's violation of 18 U.S.C. § 1962, which prohibits
racketeering activity and conspiring to commit racketeering
activity.  18 U.S.C. §§ 1962(c)-(d), 1964(c).  In other words,
"only persons who have been injured in their business or property
may pursue a civil RICO claim for damages."  Curley v. N. Am. Man
Boy Love Ass'n, 2001 WL 1822730, at *4 (D. Mass. Sept. 27, 2001)
(citing Sedima, S.P.R.L. v. Imrex Co. 473 U.S. 479 (1985))
(internal quotation marks omitted).  "Damages for wrongful death
or personal injury are not available under § 1964(c)."  Curley,
2001 WL 1822730, at *4 (citing Grogan v. Platt, 835 F.2d 844
(11th Cir. 1988)).

24

Bougopoulos appears to concede in his objection that he can not bring a civil RICO claim to recover money he spent purchasing cigarettes, for medical expenses, or for damages for his physical and mental suffering from having COPD.  Therefore, to the extent his RICO claim was based on those injuries, it is dismissed.  See Zareas v. Bared-San Martin, 209 Fed. Appx. 1, 1 (1st Cir. 2006) ("[C]laims for personal injuries, such as emotional distress, are not 'business or property' and are not cognizable under RICO."); see also Wajda v. R.J. Reynolds Tobacco Co., 103 F. Supp. 2d 29, 38 (D. Mass. 2000) ("The only economic harms recounted in the complaint are the accumulated costs of purchasing cigarettes during plaintiff's many years of smoking.  While these harms are certainly pecuniary, they are not the sort of economic harms actionable under RICO."); Atuahene v. Shermet Indus., Inc., 2000 WL 1277933, at *3 (E.D. Pa. Sept. 8, 2000)

Bougopoulos contends that his alleged injury of lost income means that he is seeking damages because he can no longer work. He argues that such an injury is compensable under civil RICO. "[A] loss of income due to an alleged inability to work since becoming afflicted with [a disease] . . . ., however, is not considered a 'loss of property' as required under RICO."[9]  Gause

---

[9]To the extent Bougopoulos argues that Diaz v. Gates, 420 F.3d 897 (9th Cir 2005) (per curiam) supports his argument that a

<u>v. Philip Morris</u>, 2000 WL 34016343, at *4 (E.D.N.Y. Aug. 8, 2000); <u>see also</u> <u>Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.</u>, 191 F.3d 229, 241 (2d Cir. 1999) ("RICO causes of action could not be asserted by . . . smokers . . . because the RICO statute requires an injury to 'business or property,' whereas [a] smoker's injuries are personal in nature."); <u>Doe v. Roe</u>, 958 F.2d 763, 770 (7th Cir. 1992) ("loss of earnings . . . reflect personal injuries which are not compensable under RICO").  Accordingly, the defendants are entitled to dismissal of Bougopoulos's civil RICO claim.


Conclusion

For the foregoing reasons, the defendants' motion to dismiss (document no. 21) is granted as to Counts II, IV, and VIII.  The defendants' motion is denied as to Count VII, and denied as to

---

smoker's loss of income due to an inability to work is a property interest under RICO, that case has been called into doubt by numerous other cases and the court is not persuaded by its reasoning.  <u>See</u> <u>Evans v. City of Chicago</u>, 434 F.3d 916, 931 n.26 (7th Cir. 2006); <u>Camarillo v. City of Maywood</u>, 2008 WL 4056994, at *2 (C.D. Cal. Aug. 27, 2008).

Count I and Count III, to the extent that both counts are based on the defendants' alleged manipulation of nicotine.

        SO ORDERED.

                                        Joseph A. DiClerico, Jr.
                                        United States District Judge

June 18, 2013

cc:   Mark A. Belasic, Esquire
      Kristin D. Casavant, Esquire
      Wilbur A. Glahn, III, Esquire
      Scott D. Kaiser, Esquire
      Robert A. McCarter, III, Esquire
      Christopher M. Morrison, Esquire
      David K. Pinsonneault, Esquire
      Mark R. Seiden, Esquire
      John James Washburn, Esquire